# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL NO. 3:09CV488-RLV-DSC

| | |
|---|---|
| EVANGELINA SMITH, )<br>      Plaintiff, )<br>)<br>vs. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social )<br>Security Administration, )<br>      Defendant. )<br>) | **MEMORANDUM AND RECOMMENDATION** |

**THIS MATTER** is before the Court on the Plaintiff's "Motion for Judgment on the Pleadings" (document #11) and "Brief in Support ..." (document #11-1), both filed May 28, 2010; and the Defendant's "Motion for Summary Judgment" (document #12) and "Memorandum in Support of the Commissioner's Decision" (document #13), both filed June 16, 2010. This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and these Motions are now ripe for disposition.

Having considered the written arguments, administrative record, and applicable authority, the undersigned will respectfully recommend that Plaintiff's Motion for Judgment on the Pleadings be denied; that Defendant's Motion for Summary Judgment be granted; and that the Commissioner's decision be affirmed.

## I. PROCEDURAL HISTORY

Plaintiff filed her first application for a period of disability and Social Security Disability benefits ("DIB") on December 1, 2003, alleging that she became disabled on September 1, 2003. On November 21, 2006, the Administrative Law Judge (ALJ) issued a decision denying Plaintiff

benefits. (Tr. 8). The Appeals Council denied Plaintiff's Request for Review, and she filed a complaint in the United States District Court for the Western District of North Carolina. See Civil Action No. 3:07cv253. After reviewing the briefs from both parties, the Magistrate Judge to whom that case was referred (the Honorable David C. Keesler) issued an "Order" on July 23, 2009, in which he recommended affirming the Commissioner's decision. Id., document #24. On October 14, 2009, the Honorable Robert J. Conrad, Jr., the presiding District Judge in that case, adopted Judge Keesler's recommendation, denied Plaintiff's Motion for Summary Judgment, and granted the Commissioner's Motion for Summary Judgment. Id., document #25. Specifically, Judge Conrad "accept[ed] the M&R of the Magistrate Judge and adopt[ed] it as the final decision of this Court for all purposes relating to this case." Id. at 2.

The Court entered Judgment for the Commissioner on the same day. Id., document # 26. The time for appealing that Judgment has long passed.[1]

Following issuance of the first administrative decision, on June 8, 2007, Plaintiff filed a second application for a period of disability, Social Security Disability benefits, and Supplemental Security Income benefits ("SSI"), alleging the same disability onset date. (Tr. 8, 121-126). Plaintiff's application was denied initially and on reconsideration, and a hearing was held on April 2, 2009. (Tr. 23-61).

On May 8, 2009, the ALJ issued a decision denying Plaintiff benefits. (Tr.5-22). In his decision, the ALJ found that Plaintiff had engaged in substantial gainful activity since her alleged

---

[1] Plaintiff mistakenly stated in the Statement of the Case portion of her present brief that her appeal of the decision in Case No. 3:07cv253 was still pending before this Court. See Plaintiff's "Brief in Support ..." at 1 (document #11-1). Moreover, her present assignments of error are largely replications of arguments that she made in her prior appeal and which Judges Keesler and Conrad considered and rejected. Because Plaintiff has not and can not pursue further review of the ALJ's decision in the prior case, that decision is res judicata through the date that the decision was issued, that is, November 21, 2006. See Lively v. Secretary of Health and Human Services, 830 F.2d 1391 (4th Cir. 1987).

2

onset date and had worked as a call center representative from September through December 2005. The ALJ also found that Plaintiff suffered status post surgical repair of right posterior tibial tendon rupture, depression and obesity, which were severe impairments within the meaning of the regulations, but did not meet or equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1; and that Plaintiff retained the Residual Functional Capacity ("RFC")[2] to perform sedentary work,[3] which did not require climbing of ladders or scaffolds, working around dangerous equipment, or operating foot controls with her right foot and which was limited to simple, routine, repetitive tasks in a low stress environment. The ALJ also found that Plaintiff could not perform her past relevant work, and that she was a "younger individual," as that term of art is used for Social Security purposes, with a high school education.[4]

The ALJ then correctly shifted the burden to the Secretary to show the existence of other jobs in the national economy which the Plaintiff could perform. In response to a hypothetical that factored in the above limitations, the Vocational Expert identified three sedentary jobs (payroll timekeeper, clerical sorter, and ticket seller) that the Plaintiff could perform and stated that 11,000 of these jobs existed in North Carolina. Accordingly, the Vocational Expert's testimony provided substantial evidence that there were a significant number of jobs in the national economy that the

---

[2] The Social Security Regulations define "Residual Functional Capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

[3] "Sedentary" work is defined in 20 C.F.R. § 404.1567(a) as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

[4] The record shows that Plaintiff was 39 years-old on her alleged disability date.

3

Plaintiff could perform. (Tr. 21.)

By notice dated September 25, 2009, the Appeals Council denied Plaintiff's request for further administrative review.

Plaintiff filed the present action on November 16, 2009. Plaintiff assigns error to the ALJ's evaluations of the opinion of her treating orthopedist, Dr. W. Hodges Davis, and of Plaintiff's subjective complaints of pain. Plaintiff also assigns error to the ALJ's conclusions that she could sit, stand, and/or walk long enough to perform sedentary work and that her impairments did not equal Listing 1.02, "Major Dysfunction of a Joint." See Plaintiff's "Brief in Support ..." (document #6). The parties' cross dispositive Motions are ripe for disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

4

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION OF CLAIM

The question before the ALJ was whether at any time the Plaintiff became "disabled," as that term of art is defined for Social Security purposes.[5] As noted above, the decision in the prior hearing is res judicata as to whether Plaintiff was disabled on or before November 21, 2006. Plaintiff cites very little evidence arising after that date. To the contrary, as Judge Keesler has already concluded, substantial evidence supports the ALJ's ultimate conclusion that Plaintiff was

---

[5] Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .
> Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

not disabled because she retained the RFC to perform the sedentary jobs identified by the Vocational Expert.

The Court also notes that the majority of Plaintiff's present assignments of error (Dr. Davis's opinion, Plaintiff's ability to sit, stand and/or walk, and Listing 1.02, "Major Dysfunction of a Joint") were considered and rejected by Judge Keesler. Plaintiff elected not to appeal that decision. Accordingly, the first hearing decision is res judicata as to those issues as well, at least through November 21, 2006.

The Fourth Circuit has held that a treating physician's opinion need not be afforded controlling weight. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992).[6] A treating physician's opinion on the nature and severity of the alleged impairment is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) (2002); and Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Therefore, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro, 270 F.3d. at 178, citing Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).

Dr. Davis's opinion is contained in a Physical Capacities Evaluation form he completed on June 18, 2006. (Tr. 228). In that assessment, he concluded that Plaintiff should sit for four hours in an eight-hour day, stand and walk for one hour each in an eight-hour day, and lie down/elevate her legs for two hours in an eight-hour day. (Tr. 228). Dr. Davis also determined that Plaintiff

---

[6]As Defendant points out in his brief, Plaintiff cites an earlier standard of review that was overruled in Sullivan, supra, following an adoption of new rules by the Administration. See Document #6 at 19, citing Coffman v. Bowen, 829 F.2d 514, 517-518 (4th Cir. 1987) (treating physician's opinion entitled to "great weight," and can only be rejected if there is persuasive evidence to the contrary in the record); Wilson v. Heckler, 743 F.2d 218, 221 (4th Cir. 1984) (same); Millner v. Schweiker, 725 F.2d 243, 245-246 (4th Cir. 1984) (same).

6

could frequently lift up to ten pounds, occasionally lift up to twenty pounds, use her hands for repetitive tasks, and frequently reach above shoulder level. (Tr. 228). He added that Plaintiff could not use her right foot for repetitive movements, and recommended that she not engage in bending, squatting, crawling, or climbing. (Tr. 228). The ALJ referenced Dr. Davis' opinion in the hearing decision, and found that the identified limitations were consistent with the stated residual functional capacity (RFC) determination. (Tr. 20).

Plaintiff argues that the ALJ should have credited Dr. Davis' opinion as stating that she needed to lie down for two hours over the course of an eight-hour workday. See Plaintiff's "Brief in Support ..." at 7-8 (document #6). Judge Keesler has already decided that there is no merit to Plaintiff's contention. In fact, the Court found that

> The evidence of record does not support the Plaintiff's argument that she should lie down for two hours over the course of an eight-hour workday, but rather indicates that Dr. Davis intended for the Plaintiff to elevate her right leg for two hours when sitting. A "/" is used to separate two alternatives - lying down and elevating legs. Dr. Davis did not specify which alternative he intended to indicate on the Plaintiff's evaluation, but he subsequently instructed the Plaintiff to "elevate her leg two to three hours per day," indicating that he did not intend for the Plaintiff to lie down two hours per day. (Tr. 170). At no point in his treatment notes did Dr. Davis suggest that the Plaintiff needed to lie down rather than merely elevate her leg. (Tr. 142, 143, 145, 154, 155, 158, 160).

Civil Action No.: 3:07cv253, Document #24 at 8. Judge Keesler further found that "Dr. Davis' statements indicate that the Plaintiff is capable of sitting down for a total of six hours during an eight-hour workday, thus satisfying this requirement of sedentary work." Id. As discussed above, Plaintiff did not appeal the Court's decision, which is binding on this issue at least through the date of the prior decision. Concerning her condition after November 21, 2006, Plaintiff offers only Dr. Davis' August 2007 statement, in which he stated that Plaintiff could not engage in prolonged standing or walking (Tr. 235), a finding that is merely duplicative of his June 2006 opinion.

7

Concerning Plaintiff's ability to sit, stand and/or walk and whether her impairments met the requirements of Listing 1.02, the ALJ evaluated the evidence and concluded that Plaintiff's foot pain and status post surgical repair of her right posterior tibial tendon rupture did <u>not</u> meet or equal any impairment in Listing Section 1.00 (or subsection) or any other listed impairment in Appendix 1. (Tr. 12).

In support of her assignment of error on this point, Plaintiff cites to the following evidence: an x-ray demonstrating that she had a bony protrusion from her ankle and swelling of the sinus tarsi; Dr. Davis's August 2007 statement discussed above; and Dr. Davis' statement that she could only walk and stand for one hour in an eight-hour day, and needed to keep her legs elevated for two hours a day. Other than Dr. Davis' August 2007 statement, this is the same evidence that Plaintiff cited in her previous brief to this Court. The Court evaluated that evidence, and found that

> Plaintiff inaccurately equates the x-ray confirming an osteophyte of the right ankle as establishing ankylosis of the ankle; some swelling of the sinus tarsi as establishing chronic pain and stiffness of the right ankle; and treating orthopedist Dr. W. Hodges Davis' instruction that Plaintiff should stand for only one hour, walk for only one hour, and elevate her legs for two hours in an eight hour workday as establishing Plaintiff's inability to ambulate effectively. (Document No. 21, p. 7). Plaintiff's mischaracterization of the evidence does not provide a basis for overturning the ALJ's decision.

Civil Action No. 3:07cv253, Document #24 at 5. The Court also determined that the medical evidence did not demonstrate a "'gross anatomical deformity' or an impairment resulting in chronic joint pain or stiffness limiting motion of the right ankle." <u>Id.</u> at 6. The Court added that there was no imaging evidence of joint space narrowing, bony destruction, or ankylosis of Plaintiff's right ankle, nor was there any evidence that indicated that she could not effectively ambulate. <u>Id.</u> As for Dr. Davis' August 2007 statement, the doctor merely concluded that Plaintiff could not engage in prolonged standing or walking (Tr. 235). Such evidence fails to establish that Plaintiff's impairment

met or equaled an impairment in Listing Section 1.00 generally or Listing 1.02 specifically.

Finally, Plaintiff contends that the ALJ failed to apply the correct legal standard in evaluating her subjective complaints of pain. To the contrary, the ALJ properly applied the standard for determining a claimant's residual functioning capacity based on subjective complaints of pain and, in this case, the record contains substantial evidence to support the ALJ's conclusion that Plaintiff's testimony was <u>not</u> fully credible.

The determination of whether a person is disabled by nonexertional pain or other symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." <u>Craig v. Chater</u>, 76 F.3d 585, 594 (4th Cir. 1996), <u>citing</u> 20 C.F.R. § 416.929(b); <u>and</u> § 404.1529(b); 42 U.S.C. § 423(d)(5)(A). If there is such evidence, then the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." <u>Id.</u> at 595, <u>citing</u> 20 C.F.R. § 416.929(c)(1); <u>and</u> § 404.1529(c)(1). The regulations provide that this evaluation must take into account:

> not only the claimant's statements about his or her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

<u>Craig</u>, 76 F.3d at 595 (citations omitted).

The record contains evidence of Plaintiff's status post surgical repair of right posterior tibial tendon rupture, depression and obesity – which <u>could</u> be expected to produce some of the pain claimed by Plaintiff. Although the ALJ did not expressly state that he found Plaintiff to have met

9

the first prong of the test, the presence of evidence establishing those severe impairments along with the fact that the ALJ then moved on to the second prong of the test, is, as Plaintiff concedes, a clear indication that the ALJ found that Plaintiff could satisfy the first prong of the test articulated in Craig.

Plaintiff objects to the absence of an express finding that the first prong was met. As Defendant points out in his brief, it is well established in this District that the practice of moving directly to the second prong is a sufficient indication of an ALJ's consideration of the first prong of the test. See Fullbright v. Apfel, 114 F. Supp. 2d 465, 477 (W.D.N.C. 2000); Pittman v. Massanari, 141 F. Supp. 2d 601, 610 (2001); Goodwin v. Halter, 140 F. Supp. 2d 602, 608 (W.D.N.C. 2001). Moreover, Plaintiff has failed to cite to any authority which requires an ALJ to explain the basis for his step one finding. The cases Plaintiff has cited fail to support her claim. The Second Circuit's holding in Nelson v. Bowen, 882 F.2d 45, 48 (2d Cir. 1989), and the Third Circuit's decisions in Mason v. Shalala, 994 F.2d 1058, 1067-1068 (3rd Cir. 1993) and Kent v. Schweiker, 710 F.2d 110, 115 (3d Cir. 1983) stand for the proposition that subjective complaints should be accorded great weight if they are supported by the objective medical evidence in the record. Those decisions are not inconsistent with the manner in which the ALJ evaluated this claim. The ALJ determined that Plaintiff's subjective complaints were not fully credible, as they were not consistent with the objective evidence in the record.

In making his credibility determination, the ALJ first discussed Plaintiff's hearing testimony. The ALJ noted that Plaintiff testified that she last worked in December 2005, as a part-time employee in a NASCAR call center, and while she had medical problems during that period, she left her job because she was laid off. (Tr. 14). The ALJ next noted that Plaintiff stated that she received unemployment benefits for a short time and continued to look for work after being laid-off. (Tr. 14).

The ALJ then noted that Plaintiff reported that she attended vocational rehabilitation and a church program, but neither provider was able to help her find work. (Tr. 14). The ALJ also noted that Plaintiff testified about her right foot injury, explaining that since 2006, she had experienced problems with swelling, numbness, and daily pain, with her pain being rated as nine out of ten while she was sitting, even with medication. (Tr. 15). The ALJ further noted that Plaintiff stated that she had been prescribed Naproxen and Darvocet, which caused drowsiness, and she used ice to relieve her daily swelling. (Tr. 15). The ALJ added that Plaintiff reported that her orthopedist, Dr. Davis, informed her that she needed to elevate her foot, which she did for two to three hours, several times a day. (Tr. 15). The ALJ additionally noted that Plaintiff stated that she could walk less than a block, she could not sit or stand for more than twenty to thirty minutes without pain, and she could not stoop, bend, or lift ten pounds. (Tr. 15).

After considering the objective and subjective evidence in the record, the ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms, but her statements concerning the intensity, persistence, and limiting effect of her symptoms were not credible to the extent that they were inconsistent with the residual functional capacity finding. (Tr. 15). In reaching this determination, the ALJ noted that the previous ALJ's decision was made in accordance with Acquiescence Ruling 00-1(4) and <u>Albright v. Commissioner of Social Security Administration</u>, 174 F.3d 474 (4th Cir. 1999). (Tr. 15). The ALJ then concluded that the previous ALJ's decision was entitled to substantial weight because the present claim was filed less than one year after the prior decision was issued, the alleged disability was based on the same physical impairments and began on the same date alleged in the prior claim, and the medical evidence obtained for the present claim did not demonstrate a significant change in Plaintiff's current condition. (Tr. 15-16).

The ALJ went on to state that Plaintiff's description of her symptoms and limitations between November 22, 2006, and the date of this decision was not persuasive, as she appeared to have exaggerated her symptoms and limitations. (Tr. 16). In support of that finding, the ALJ noted that while Plaintiff testified that since November 22, 2006, she had experienced daily pain rated as nine out of ten even with medication, as well as swelling and numbness, her medical records reflected infrequent visits to the doctor for her allegedly disabling symptoms and significant gaps in her treatment history. (Tr. 16). Specifically, the ALJ noted that Plaintiff was seen by Dr. Davis on December 1, 2004, and he found that although she had some tenderness on her plantar fascia, her ankle mobility was excellent, the incision on her heel was well-healed, and the only recommended treatment was stretching exercises, a Visco heel cup, and Celebrex. (Tr. 16). The ALJ then noted that Plaintiff's next visit to Dr. Davis was not until July 2006, and at that visit he determined that she was limited in her weight bearing, but could return to modified duties on July 19, 2006, "at sit down work." (Tr. 16). The ALJ next noted that Plaintiff returned to Dr. Davis in December 2006, and he concluded that she was not a good candidate for fusion surgery, and he would see her again as needed. (Tr. 16). The ALJ also noted that Dr. Burke, Plaintiff's primary care physician, observed in July 2007 that she walked normally, and should take an anti-inflammatory medication as needed for her foot pain. (Tr. 16). The ALJ further noted that in August 2007, Dr. Davis stated that Plaintiff was complaining of pain in both feet, which prevented her from walking long distances or standing for a significant period of time. However, he only diagnosed her with flat feet, and determined that due to this condition she should not engage in prolonged standing or walking. (Tr. 16). The ALJ noted that Dr. Davis concluded since Plaintiff wanted to put off surgery for as long as possible, she should return when her pain increased to the point that she needed surgical intervention. (Tr. 16). The ALJ additionally noted that Plaintiff was not seen again at Dr. Davis'

office until October 10, 2008, when a physician's assistant noted that she had not been fitted for the arch supports that Dr. Davis recommended. There was no obvious swelling or deformity in her foot, and her foot was not tender at that time. (Tr. 16). Lastly, the ALJ noted that Dr. Steinmuller concluded at the psychiatric consultative examination that while Plaintiff stated that she had pain rated as nine out of ten even with medication, her infrequent visits to Dr. Davis, her failure to secure the recommended arch supports, and her decision not to have surgery suggested that her symptoms since November 22, 2006, might not be as serious as she alleged. (Tr. 17).

The ALJ next addressed Plaintiff's testimony regarding her daily activities. The ALJ noted that Plaintiff testified that she did nothing, her daily activities included waking up at 6:30 a.m., bathing, dressing, and dusting, and her mother and son helped her with the cooking and the majority of the housework. (Tr. 17). The ALJ next noted that Plaintiff stated she had no hobbies, did not attend school activities for her daughter, drove but not often, went out about once a month, and attended church every Sunday, but might not stay the entire time. (Tr. 17). The ALJ also noted that Plaintiff reported she did not read, watched television for thirty minutes a day, worked on the computer for thirty minutes a week, and slept four or more hours a day due to her fatigue and medication. (Tr. 17). The ALJ then determined that even if Plaintiff's activities were as limited as she reported, it was difficult to attribute the limitations to her medical condition, as opposed to other reasons, due to the relatively weak medical evidence in the file and other factors discussed in the decision. (Tr. 17). In support of this conclusion, the ALJ noted that Plaintiff was able to perform substantial gainful activity at a sedentary job for NASCAR between September and December 2005 with no apparent side effects, even though she reported experiencing pain and discomfort. (Tr. 17). The ALJ also noted that Plaintiff did not leave her job due to her foot pain, but because she was laid off. The ALJ found that since her impairment did not prevent her from working during that period,

it strongly suggested that her impairment would not prevent her from working now. (Tr. 17). The ALJ further noted that while Plaintiff was involved as the driver in car accidents occurring in January and September 2007, and January and September 2008, no mention was made in the emergency room reports that she had foot pain. The medical notes indicated that she complained primarily of back and neck pain, and on all four occasions she was able to walk into the emergency room without apparent difficulty. (Tr. 17). The ALJ added that Dr. Burke recommended to Plaintiff in September 2007 that she get some exercise, and her new primary care physician urged her in November 2007 to take water aerobics classes. (Tr. 17). In addition, the ALJ noted that Plaintiff reported to Dr. Steinmuller that she went grocery shopping and prepared meals with her mother, and she was able to do a little laundry. (Tr. 17).

The ALJ also discussed Plaintiff's statements regarding her medication. (Tr. 17-18). The ALJ noted that Plaintiff testified her medications caused drowsiness, and led her to sleep for four or more hours a day. (Tr. 17). The ALJ found that while Plaintiff stated she had been prescribed Naprosyn (Naproxen) and Darvocet by Dr. Davis in 2007, that was not reflected in her medical records. The September 2008 and February 2009 treatment records from her primary care physician did not list Darvocet as a current medication, and there was no evidence that she was seen by Dr. Davis' office between August 2007 and October 2008. (Tr. 17-18). The ALJ further noted that in October 2008, the physician's assistant gave Plaintiff a few Darvocets to use sporadically. (Tr. 18). The ALJ added that the office treatment notes did not corroborate Plaintiff's claim that she experienced side effects from her medication. (Tr. 18).

The ALJ correctly evaluated the "intensity and persistence of [his] pain, and the extent to which it affects [his] ability to work" in making the Craig step two evaluation and found Plaintiff's subjective description of her limitations not credible.

Although the medical records establish that the Plaintiff experienced pain and mental and emotional difficulties to some extent or degree, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976). Moreover, the facts noted by the ALJ clearly support the ultimate conclusion that Plaintiff suffered from, but was not disabled from working, by her combination of impairments.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles v. Shalala, 29 F.3d 918, 923 (4th Cir. 1994)(citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). This is precisely such a case, as it contains substantial evidence to support the ALJ's treatment of the medical records and Plaintiff's credibility and his ultimate determination that Plaintiff was not disabled.

## IV. <u>RECOMMENDATIONS</u>

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion for Judgment on the Pleadings" (document #11) be **DENIED**; that Defendant's "Motion for Summary Judgment" (document #12) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED**.

## V. <u>NOTICE OF APPEAL RIGHTS</u>

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file

objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Court.  Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989).   Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal.  Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Richard L. Voorhees.

**SO RECOMMENDED AND ORDERED**.

Signed: July 7, 2010

David S. Cayer
United States Magistrate Judge