## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE  DIVISION
### 3:09cv488

| | |
|---|---|
| **EVANGELINA SMITH,** )<br>)<br>  **Plaintiff,** )<br>)<br>**Vs.** )<br>)<br>**MICHAEL J.  ASTRUE,** )<br>**Commissioner of Social Security,** )<br>)<br>  **Defendant.** )<br>**_____** ) | **MEMORANDUM**<br>**OF DECISION**<br>**and ORDER** |

**THIS MATTER** is before the court on the plaintiff's Motion for Judgment

on the Pleadings (#11), the Commissioner's Motion for Summary Judgment (#12),

and the Memorandum and Recommendation of Honorable David S. Cayer, United

States Magistrate Judge (#14). The court has before it plaintiff's Objections (#16)

and the Commissioner's Response (#17). The court has considered the arguments

of the parties, and the matter is now ripe for determination.

### FINDINGS AND CONCLUSIONS

### I.    Introduction

Plaintiff has not objected to the Procedural History as set forth on pages one

through three of the M&R. The court therefore adopts as its own such section of

the M&R.

### II.    Legal Standard

The Federal Magistrate Act provides that "a district court shall make a *de novo* determination of those portions of the report or specific proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983).  However, "when objections to strictly legal issues are raised and no factual issues are challenged, *de novo* review of the record may be dispensed with." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir.1982).  Similarly, *de novo* review is not required by the statute "when a party makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations." Id. Moreover, the statute does not on its face require any review at all of issues that are not the subject of an objection. Thomas v. Arn, 474 U.S. 140, 149 (1985); Camby, 718 F.2d at 200. Nonetheless, a district judge is responsible for the final determination and outcome of the case, and accordingly the court has conducted a careful review of the Judge Cayer's M&R.

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this court's review of the Commissioner's final decision to: (1) whether substantial evidence supports the decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards.

Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 390; see Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1996). The decision must be based on the record as a whole. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986). The appellate court has emphasized that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456; Smith v. Schweiker, 795 F.2d at 345; Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). It is the duty of the ALJ, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case *de novo* when reviewing disability determinations."). If the Commissioner's decision is supported by substantial evidence under the correct legal standard, it must be affirmed even if the reviewing court would have decided differently. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

**III. Consideration of Plantiff's Objections**

**A.      Objections**

In her Objections, plaintiff makes the following objections to the recommendations of Judge Cayer:

(1)      the recommendation failed to follow the holding in <u>Craig v. Chater</u>, 76 F.3d 585 (4th Cir. 1996), because neither the court nor the ALJ answered the threshold question under <u>Craig</u>, and thus there has been no proper <u>Craig</u> Step One finding (Obj., at 2-3);

(2)      the recommendation failed to address her allegation that the <u>Craig</u> Step One finding was faulty because the ALJ found that her impairments could reasonably cause some but not all of the pain alleged (Pl. Obj. at 3-4);

(3)      the recommendation failed to understand <u>Craig</u> if the court  believed that the threshold question can be satisfied by a finding at Step Two of the sequential evaluation process (Obj., at 5-6);

(4)      the recommendation failed to recognize that the burden for a claimant under <u>Craig</u> is quite high, and thus if there is a positive Step One finding, the ALJ must have the "frame of mind" that the claimant's testimony is deserving of great weight ( Obj., at 7-8);

(5)     the recommendation failed to recognize or find that the ALJ did not

        approach her testimony with the deference required based on a

        positive <u>Craig</u> Step One finding (Obj., at 8);

(6)     the recommendation failed to recognize that the ALJ improperly

        performed the <u>Craig</u> inquiry is the fact that he discussed her hearing

        testimony before he made his Step One finding (Obj., at 9);

(7)     the recommendation misunderstood the <u>Craig</u> decision, as the court

        found that the "great weight" cases she cited were not inconsistent

        with the manner in which the ALJ evaluated her claim. ( Obj., at 10);

(8)     that the recommendation did not recognize that the ALJ treated Dr.

        Davis' June 18, 2006, opinion ambiguously, as the ALJ used the

        assessment to support his determination that Plaintiff could perform

        sedentary work, but failed to discuss the doctor's determination that

        she could only sit for four hours and lie down/elevate her legs for two

        hours. (Obj., at 12);

(9)     that Judge Cayer's recommendation failed to address her main

        contention, and instead side-stepped the issue by finding that *Judge

        Keesler's*[1] earlier interpretation of Dr. Davis' opinion in plaintiff's

---

[1]     This is plaintiff's second civil action in this court, involving essentially identical
allegations of disability.  In the first action, <u>Smith v. Astrue</u>, 3:07cv253 (#24) (W.D.N.C. Jul.

previous action before this court was *res judicata* (Obj. at 13) and that

Judge Cayer erred in finding that Judge Keesler's decision was

entitled to *res judicata* effect (Obj. at 14);

(10)    that the recommendation misstated her argument, as she was not

asserting that she needed to lie down two hours in an eight-hour day,

but was instead arguing that she was unable to perform sedentary

work, as Dr. Davis restricted her to sitting four hours a day and

elevating her leg for two hours a day, limitations that precluded the

performance of sedentary work (Pl. Obj. at 13);

(11)    concerning her condition after November 21, 2006, that the court

incorrectly concluded that Dr. Davis' August 2007 statement was

essentially a duplicate of his June 2006 opinion (Obj., at 15) and that

she did not only offer Dr. Davis' August 27th statement in support of

this argument, but other evidence of record (Obj., at 16); and

(12)    that the recommendation treated the ALJ's decision in the first claim -

- that she did not meet or equal a listing section as res judicata - - that

---

23, 2009), Honorable David C. Keesler, United States Magistrate Judge, issued a
recommendation affirming the Commissioner, which was upheld by Honorable Robert C.
Conrad, Jr., Chief United States District Judge.  Judge Cayer reviewed this civil action, and the
undersigned is the fourth judge of this district to review what are essentially identical claims.
The key difference in this action is that  plaintiff seeks a determination of disability covering her
final two years of eligibility, 2006-2008, which came after the last decision of the Commissioner
in 2006.

was not her argument, as she was alleging that the ALJ was required to re-contact Dr. Davis about whether she met or equaled a listing section (Obj. at 16).

Each objection will be addressed *seriatim* and respectfully overruled for the reasons that follow.

## B. Discussion

### 1. First Assignment of Error: <u>Craig</u> Analysis

In her first objection, plaintiff argues that the recommendation failed to follow the holding in <u>Craig v. Chater</u>, 76 F.3d 585 (4th Cir. 1996), because neither the court nor the ALJ answered the threshold question under <u>Craig</u>, and thus there has been no proper <u>Craig</u> Step One finding. Obj., at 2-3.

The correct standard and method for evaluating claims of pain and other subjective symptoms in the Fourth Circuit has developed from the Court of Appeals' decision in <u>Hyatt v. Sullivan</u>, 899 F.2d 329 (4th Cir. 1990)(<u>Hyatt III</u>), which held that " [b]ecause pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative." <u>Id</u>., at 336. A two-step process for evaluating subjective complaints was developed by the Court of Appeals for the Fourth Circuit in <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996).

This two-step process for evaluating subjective complaints corresponds with the Commissioner's relevant rulings and regulations. See 20 C.F.R § 404.1529; SSR 96-7p.[2]

Step One requires an administrative law judge (hereinafter "ALJ") to determine whether there is "objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." Craig, 76 F.3d at 594.

Step Two requires that the ALJ next evaluate the alleged symptoms' intensity and persistence along with the extent to they limit the claimant's ability to engage in work. Id., at 594; see also 20 C.F.R. § 404. 1529(c); SSR 96-7p. The ALJ must consider the following: (1) a claimant's testimony and other statements concerning pain or other subjective complaints; (2) claimant's medical history and laboratory findings; (3) any objective medical evidence of pain; and (4) any other evidence relevant to the severity of the impairment. Craig, 76 F.3d at 595; 20 C.F.R. § 404. 1529(c); SSR 96-7p. The term "other relevant evidence" includes: a claimant's activities of daily living; the location, duration, frequency and intensity

----

[2]    "The purpose of this Ruling is to clarify when the evaluation of symptoms, including pain, under 20 CFR 404.1529 and 416.929 requires a finding about the credibility of an individual's statements about pain or other symptom(s) and its functional effects; to explain the factors to be considered in assessing the credibility of the individual's statements about symptoms; and to state the importance of explaining the reasons for the finding about the credibility of the individual's statements in the disability determination or decision."  S.S.R. 96-7p (statement of purpose).

of their pain or other symptoms; precipitating and aggravating factors; the type,

dosage, effectiveness and side effects of medications taken to alleviate their pain

and other symptoms; treatment, other than medication, received; and any other

measures used to relieve their alleged pain and other symptoms. Id.

Turning to plaintiff's objection, she contends that the recommendation is

contrary to the decision in Craig because the ALJ failed to make a proper threshold

inquiry at Step One under Craig. Judge Cayer found, as follows:

> Plaintiff objects to the absence of an express finding that the
> first prong was met. As Defendant points out in his brief, it is well
> established in this District that the practice of moving directly to the
> second prong is a sufficient indication of an ALJ's consideration of
> the first prong of the test. See Fullbright v. Apfel, 114 F. Supp. 2d
> 465, 477 (W.D.N.C. 2000); Pittman v. Massanari, 141 F. Supp. 2d
> 601, 610 (2001); Goodwin v. Halter, 140 F. Supp. 2d 602, 608
> (W.D.N.C. 2001). Moreover, Plaintiff has failed to cite to any
> authority which requires an ALJ to explain the basis for his step one
> finding. The cases Plaintiff has cited fail to support her claim. The
> Second Circuit's holding in Nelson v. Bowen, 882 F.2d 45, 48 (2d
> Cir. 1989), and the Third Circuit's decisions in Mason v. Shalala, 994
> F.2d 1058, 1067-1068 (3rd Cir. 1993) and Kent v. Schweiker, 710
> F.2d 110, 115 (3d Cir. 1983) stand for the proposition that subjective
> complaints should be accorded great weight if they are supported by
> the objective medical evidence in the record. Those decisions are not
> inconsistent with the manner in which the ALJ evaluated this claim.
> The ALJ determined that Plaintiff's subjective complaints were not
> fully credible, as they were not consistent with the objective evidence
> in the record.

M&R, at 10. Here, the ALJ found that plaintiff's status post surgical repair of her

right tibial tendon rupture, depression, and obesity were severe impairments, A.R.,

at 11; thus, the ALJ completed the first step of the <u>Craig</u> analysis as the judges of the Western District of North Carolina have consistently determined. <u>Fullbright v. Apfel</u>, 114 F. Supp. 2d 465, 477 (W.D.N.C. 2000); <u>Pittman v. Massanari</u>, 141 F. Supp. 2d 601, 610 (2001); <u>Goodwin v. Halter</u>, 140 F. Supp. 2d 602, 608 (W.D.N.C. 2001).

Here, plaintiff argues that the appellate court in <u>Craig</u> reversed the final decision of the Commissioner because the ALJ had not conducted a Step One review. Close review of <u>Craig</u>, however, reveals that the appellate court therein created a new standard for evaluating subjective complaints at Step One, <u>Craig v. Chater</u>, 76 F.3d at 591-96, and that the remand afforded in <u>Chater</u> was to provide the Commissioner an opportunity to evaluate plaintiff's credibility under that new standard.

Plaintiff's assignment of error is respectfully overruled as <u>Craig</u> does not require specific findings at Step One where the ALJ progresses to Step Two.

**2.     Second Assignment of Error: <u>Craig</u> Step One Analysis Faulty Because ALJ Found that Her Impairments Could Cause Some, But Not All of the Pain Alleged**

Continuing to rely on a reading <u>Craig</u> that would require a specific determination at Step One, plaintiff next objects that the recommendation failed to address her allegation that the <u>Craig</u> Step One finding was faulty because the ALJ

found that her impairments could reasonably cause some *but not all* of the pain alleged. Obj., at 3-4. Judge Cayer found that the record contained evidence that plaintiff had impairments which could be expected to produce the pain alleged, and that was sufficient to satisfy the first prong of Craig. M&R, at 9-10. Such determination by Judge Cayer was wholly consistent with decisions of this district cited above.

In support of her objection, plaintiff cites the court to a decision of another United States Magistrate Judge in another district within the Fourth Circuit, Rebrook v. Astrue, No. 1:09cv50, 2010 WL 2233672 (N.D. W. Va. May 14, 2010).[3] Unlike this case where plaintiff argues that the ALJ failed at Step One of the Craig analysis, the court in Rebrook first determined that the ALJ erred at Step Two inasmuch as the finding that the claimant did not *currently* suffer from seizures was fatal to the ALJ's credibility determination. Id., at *24. At that point, the court then went on to hold that because the claimant only had a history of seizures and pseudoseizures, the ALJ lacked a basis for making a positive Step One finding. Id. The court held in Rebrook, as follows:

---

[3]     Due to the limits of Electronic Case Filing, a copy of such unpublished decision is placed in the electronic docket through incorporation of the Westlaw citation. Such decision was adopted without objection by the district court in Rebrook v. Astrue, 2010 WL 2292668 (N.D.W.Va. Jun. 3, 2010).

The undersigned must first note that he believes the ALJ's error at Step Two in not finding Plaintiff suffered from current seizures at all, is fatal to his credibility determination. If, as he found, Plaintiff had only a history of seizures and pseudoseizures, she could not pass Step One of the credibility evaluation. Worse, as he found at Step Three, he did not believe that any fully credible and objective medical evidence of record indicated that Plaintiff had a valid seizure disorder or treatment regimen that met or comported with the requirements of [SSR 87-6]. This statement appears to the undersigned inconsistent with a finding that Plaintiff has shown by objective evidence the existence of a medical impairment "which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." Id.

The ALJ does not, in fact, state that Plaintiff has medically determinable impairments that could reasonably be expected to produce the actual pain, in the amount and degree alleged by the claimant. Instead, he finds that Plaintiff "has had medically determinable impairments during the period at issue that could reasonably be expected to produce some of the symptoms she has alleged." This finding could mean almost anything. It could mean that she only had a history of skin rash or only a depressive disorder or only an anxiety disorder. It is therefore impossible for the undersigned to determine whether the ALJ found Plaintiff had met the threshold requirement of Craig.

Assuming, arguendo, the ALJ has found Plaintiff met the threshold step in Craig, he was next required to evaluate the intensity and persistence of the her symptoms, and the extent to which they affected her ability to work. This evaluation must take into account not only the claimant's statements, but also "all the available evidence," including her medical history, medical signs, and laboratory findings, see id.; any objective medical evidence, and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it. Again, the undersigned notes the ALJ's failure to consider most of the third-party evidence-considered a requirement under the Regulations, and finds he has therefore not taken into account "all the available evidence." Further, again in his credibility analysis, the ALT raises the issue of

> the lack of any abnormal EEG's, despite the fact that "it is rare for an EEG to confirm epilepsy in its other forms for either adults or children." See 67 F.R. 20018, *20019.

Id. While such decision emanating from the North District of West Virginia is given careful consideration by this court, the *unpublished* decision of another district court is, respectfully, not binding on colleague courts. Gasperini v. Center for Humanities, Inc., 518 U.S. 415 (1996). While a similar argument could be made that decisions of other district judges in this district would not be binding on the undersigned, the court believes the collective decisions of this district are most persuasive, reflecting pragmatic application of Craig that comports with 20-plus years of appellate precedent that has attempted to focus the Commissioner on making credibility determinations based on real world factors.

While the North District of West Virginia's opinion in Rebrook could be read to support plaintiff's argument, the parts that would support plaintiff's argument appear to be *dicta* inasmuch as the court had already determined that the analysis failed at the Second Step and remand was required. Finally, reading such decision in the manner plaintiff suggests would contradict previous decisions of this district which have been carefully considered and comport with circuit precedent.

As Judge Cayer's finding was based on prior decisions of this court and is consistent with current law, plaintiff's objection will be respectfully overruled.

**3.     Third Objection: The Recommendation Fails to Correctly Apply  Craig if it is Read to Allow a the Step One Inquiry to be Satisfied by a Finding at Step Two**

In a further argument under <u>Craig</u>, plaintiff next contends that the recommendation failed to properly apply <u>Craig</u> if the court believed that the threshold question can be satisfied by a finding at Step Two of the sequential evaluation process.  Obj., at 5-6.

First, the court believes this is not an actionable objection under 28 U.S.C. § 636(b)(1) as such appears to be a general or conclusory objection.  <u>See</u> <u>Orpiano v. Johnson</u>, 687 F.2d at 47.  Specifically, such objection is conclusory as it simply recasts or restates an objection already made and overruled.

Judge Cayer's decision was, in any event, firmly rooted in the decisions of this court, which he both recognized and cited, <u>see</u> M&R, at 10, and which this court finds to be consistent with the instruction of <u>Craig</u>.  This objection is, therefore, respectfully overruled as a conclusory objection and, in any event, Judge Cayer's determination was fully consistent with the decisions of this district and <u>Craig</u>.

**4.     Fourth Objection: A Step One "Frame of Mind"**

Plaintiff next contends that the recommendation failed to recognize that the burden for a claimant under Craig is quite high; therefore, if an when an ALJ makes a positive Step One finding, the ALJ must have the "frame of mind" that the claimant's testimony is deserving of great weight. Obj., at 7-8.

The court greatly appreciates the advocacy that is apparent in this argument, and the court commends counsel for presenting it. The logic, however, would convert a "threshold determination" into a "finish line" if the court were to accept such argument. If such were in fact the standard, ALJs would never reach the second step under Craig as a negative finding under Step One would end the inquiry (with a no credibility determination based on medical evidence) and a positive finding would require the ALJ to afford great weight to plaintiff's complaints of subjective symptoms. Put another way, what the Fourth Circuit has been striving for in fair analysis of subjective symptoms would be set back to pre-Hyatt days by making the presence or absence "objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant" determinative. Craig v. Chater, 76 F.3d at 594.

Step One is a threshold, and only a slight one at that, which if passed prompts the Commissioner to give careful consideration to many factors, including

activities of daily living, which are instructive on whether a claimant's testimony concerning subjective complaints should then be fully credited. In <u>Mickles v. Shalala</u>, 29 F.3d 918 (4th Cir. 1994), Honorable K. K. Hall, Circuit Judge (now deceased), wrote in announcing and concurring in the judgment of the Court of Appeals for the Fourth Circuit, as follows:

> This refreshing mode of analysis is precisely what I believe our cases have been striving for. The only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life.

<u>Id.</u>, at 927. Viewed from the perspective of <u>Mickles</u>, the threshold requirement of objective medical evidence showing an impairment "which *could* reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant," <u>Craig</u> <u>supra</u> (emphasis added), is a nod to pre-<u>Hyatt</u> credibility determinations, which relied almost exclusively on the presence or absence of objective medical evidence of pain. By using the word "*could*" in formulating the Step One analysis, the appellate court in <u>Craig</u> fashioned an inquiry not unlike the *plausibility* requirement under <u>Ashcroft v. Iqbal</u>, ___ U.S. ___, 129 S.Ct. 1937 (May 18, 2009): having objective medical evidence which *could* reasonably be expected to produce the actual pain gets the claimant an *at bat*; it does not guarantee a *base hit*. By advancing the inquiry to Step Two, the ALJ does no disservice to a claimant as the ALJ conducts the substantive analysis the Fourth

Circuit has been striving for in  Hyatt, Mickles, and Craig for the past two decades. Review of the ALJ's determination in this case reveals that the ALJ gave careful consideration to the objective medical evidence of record which showed the existence of a medical impairment which *could* reasonably be expected to produce the actual pain, in the amount and degree as alleged by the claimant.

Further, the Court of Appeals for the Fourth Circuit does not adhere to the so-called "great weight" rule suggested by plaintiff.   In Craig, the appellate court held that it had never been the law in the Fourth Circuit that an "ALJ was obliged to accept, without more, [a claimant's] subjective assertions of disabling pain and her subjective assessment of the degree of that pain." Craig v. Chater, 76 F.3d at 591.

While respecting plaintiff's zealous advocacy under Craig, the court cannot agree with plaintiff's conclusion.  Plaintiff's objection will, therefore, be respectfully overruled.

### 5.    Fifth Objection: Deference to Plaintiff's Testimony After a Positive Step One Finding

As a reprise of her previous objections, plaintiff next contends that it was error for Judge Cayer not to conclude that the ALJ failed to approach her testimony with the deference required based on a positive Craig Step One finding.  Obj., at 8. While again respecting plaintiff's advocacy, review of the decisions of the Court of

Appeals for the Fourth Circuit lend no support to plaintiff's theory. Craig, supra; Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986)(allegations of pain will not equal a finding of disability, as pain is not per se disabling).

As recognized by Judge Cayer, the ALJ considered plaintiff's past relevant work, the reasons that she stopped working, her participation in vocational rehabilitation, the location of her pain, her medication, including side effects, other means she used to relieve her pain, her activities of daily living, her medical treatment history, and her functional restrictions. A.R., at 14-19. Where, as here, an ALJ determines to not fully credit a claimant's testimony concerning subjective symptoms such as pain, he has a duty to explain why he did not fully credit such testimony. In Hatcher v. Secretary, 898 F.2d 21, 23 (4th Cir. 1989), the Court of Appeals for the Fourth Circuit held that

> it is well settled that: "the ALJ is required to make credibility determinations--and therefore sometimes make negative determinations-- about allegations of pain or other nonexertional disabilities. . . . But such decisions should refer specifically to the evidence informing the ALJ's conclusion. This duty of explanation is always an important aspect of the administrative charge, . . . and it is especially crucial in evaluating pain, in part because the judgment is often a difficult one, and in part because the ALJ is somewhat constricted in choosing a decisional process."

Id., (quoting Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985) (citations omitted)). In this case, the ALJ specifically and in great detail referred to the

evidence that informed his determination by noting that: plaintiff's visits to the doctor were infrequent; there were significant gaps in her treatment history; Dr. Davis concluded on July 19, 2006, that she was capable of performing sit down work; the limitations in her activities of daily living were not attributable to her medical conditions due to the weak medical evidence; she did not leave her job due to her medical condition; the office notes did not corroborate the side effects of her medication; and the allegation that she needed to elevate her leg was inconsistent with the September 27, 2006, *Work Status Form*. A.R., at 16-18.

The undersigned respectfully overrules this objection as the ALJ gave proper consideration to plaintiff's testimony concerning her subjective symptoms and fully explained the reasons he did not fully credit her testimony.

### 6. Sixth Objection: ALJ Discussed the Hearing Testimony Before Making a Step One Inquiry

Plaintiff next contends that the recommendation failed to recognize that the ALJ improperly performed the Craig inquiry based on the fact that the ALJ discussed her hearing testimony before he made his Step One finding. Obj., at 9. Review of the ALJ's decision reveals, however, that he first set out the two-step inquiry, then he noted plaintiff's testimony, then set forth his Step One and Step Two inquiry. A.R., at 14-19. Again, the court cannot find that such method of analysis is in any way offensive to the decision in Craig. Indeed, such method is a

rationale approach to decision making. The court will respectfully overrule such objection.

### 7. Seventh Objection: Great Weight Revisited

Plaintiff further contends that the recommendation misunderstood the <u>Craig</u> decision, as Judge Cayer found that the "great weight" cases she cited were not inconsistent with the manner in which the ALJ evaluated her claim. Obj., at 10.

First, review of the recommendation reveals that Judge Cayer well understands <u>Craig</u>, as clearly shown in his well reasoned and careful decision.

Second, the court believes this objection to be conclusory for the same reasons as discussed <u>supra</u>.

Third, plaintiff asserts that if there is a positive Step One finding then "it is only because the objective evidence was consistent with [the claimant's] pain allegations," and thus the ALJ could not have found her subjective complaints were not fully credible because they were not consistent with the evidence in the record. Obj., at 11. Such argument, however, leaves out the word "could" from <u>Craig</u>, and, for the reasons already discussed, would obviate the need for the Second Step as credibility would be determined at the First Step.

This objection will respectfully be overruled.

### 8. Eighth Objection: Ambiguous Use of Medical Evidence

Plaintiff next contends that the recommendation did not recognize that the ALJ treated Dr. Davis' June 18, 2006, opinion ambiguously, as the ALJ used the medical assessment to support his determination that plaintiff could perform sedentary work, but failed to discuss the doctor's determination that she could only sit for four hours and lie down/elevate her legs for two hours. Obj., at 12. Review of the ALJ's decision, however, reveals that he referenced each opinion of Dr. Davis and determined that the limitations he identified were consistent with the Residual Functional Capacity ("RFC"). A.R., at 20.

As to plaintiff's argument that the decision failed to discuss Dr. Davis' determination that plaintiff could only sit for four hours and lie down/elevate her legs for two hours, the ALJ unequivocally noted that in the September 27, 2006, "Work Status Report," Dr. Davis concluded that plaintiff needed to elevate her leg for two hours in an eight-hour day *for only three weeks*, and that she was cleared to return to sit-down work as of that date. A.R., at 18. Further, this court determined in the previous action that "Plaintiff is capable of sitting down for a total of six hours during an eight-hour workday, thus satisfying this requirement of sedentary work. (Tr. 162)." Smith v. Astrue, supra, at 8. Substantial evidence supports the ALJ's determination that Plaintiff could perform sedentary work.

Plaintiff's objection will, therefore be respectfully overruled.

### 9. Ninth and Tenth Objections: Side-Stepping and Misstating Plaintiff's Argument

Plaintiff's next objection is that the recommendation failed to address her main contention, and instead "side-stepped" the issue by finding that Judge Keesler's earlier interpretation of Dr. Davis' opinion in plaintiff's previous action before this court was *res judicata* (Obj., at 13) and that Judge Keesler's decision is not entitled to *res judicata* effect (Obj., at 14). She also states that Judge Cayer misstated her argument, as she was not asserting that she needed to lie down two hours in an eight-hour day, but was instead arguing that she was unable to perform sedentary work, as Dr. Davis restricted her to sitting four hours a day and elevating her leg for two hours a day, limitations that would preclude the performance of sedentary work. Obj., at 13.

Review of the record reveals, however, that Dr. Davis' June 2006 opinion that plaintiff needed to elevate her leg was superseded by his September 2006 opinion that she only needed to elevate her leg *for three weeks*. A.R., at 224, 228. Further, this court has already determined that

> Dr. Davis' statements indicate that the Plaintiff is capable of sitting down for a total of six hours during an eight-hour workday, thus satisfying this requirement of sedentary work.

Smith v. Astrue, supra, at 8. Judge Cayer properly affirmed the ALJ's finding that plaintiff could perform sedentary work.

In a related objection, plaintiff also asserts that Judge Keesler's decision is not entitled to *res judicata* effect. Obj., at 14. *Res judicata* applies where there is a judgment on the merits in a prior suit resolving a claim by the same parties or their privies, followed by a subsequent suit based on the same cause of action. Ohio Valley Environmental Coalition v. Aracoma Coal, 556 F.3d 177, 210 (4th Cir. 2009). Plaintiff's prior claim was resolved by this court on October 14, 2009, when Honorable Robert J. Conrad, Jr., Chief United States District Judge, affirmed Judge Keesler's M&R, Smith v. Astrue, supra, (#25 & #26). Before that case was resolved, however, plaintiff had submitted a new claim to the Commissioner, which facially involves the same parties and substantially the same issues. The only difference the court can find is that this action includes the final years of plaintiff's eligibility for benefits. The claims in both actions are based on the same onset date, substantially the same evidence, and nearly identical claims concerning impairments. Judge Cayer properly granted *res judicata* effect to Judge Keesler's and Judge Conrad's decision.

Finally, Plaintiff's argument that "[n]ot even ALJ Sage [the ALJ in this action], in his later decision, used Judge Keesler's rationalization" to support the determination that plaintiff could perform sedentary work, Obj., at 15, is fatally flawed as plaintiff failed to note that Judge Keesler's M&R was issued in July

2009, which was  months *after* ALJ Sage issued his decision in May 2009.  A.R., at 5.

Objections Nine and Ten will be respectfully overruled.

### 10.    Eleventh Objection: Duplicate Opinions from Dr. Davis

As to her condition after November 21, 2006, plaintiff contends that the court  incorrectly concluded that Dr. Davis' August 2007 statement was essentially a duplicate of his June 2006 opinion,  Obj., at 15, and that she did not *only* offer Dr. Davis' August 27th statement in support of this argument, but other evidence of record.  Obj., at 16.

Contrary to the first part of plaintiff's argument, the Commissioner has shown in his response that both opinions essentially restrict plaintiff to limited standing and walking, resulting in no error by Judge Cayer.

AS to the second part of her argument, plaintiff is correct that she noted other evidence in the factual portion her brief regarding her condition after November 21, 2006; however, review of  her argument in support of her dispositive motion reveals that the argument itself was solely based on Dr. Davis' June 2006 opinion and Dr. Davis' response to the ALJ's decision in the earlier

action.  Thus, Judge Cayer's statement, to the extent that it is in error, is harmless

as it had no bearing on the ultimate decision in this case.

Plaintiff's objection will be respectfully overruled.

### 11.    Twelfth Objection: Misconstruing Plaintiff's Argument

Finally, plaintiff contends in her twelfth objection that the recommendation

treated the ALJ's determination in the first claim, to the effect that she did not meet

or equal a listing section, as *res judicata*, when what plaintiff was alleging was that

the ALJ was required to re-contact Dr. Davis about whether she met or equaled a

listing section.  Obj., at 16.  Review of plaintiff's brief in support of her Motion for

Judgment on the Pleadings reveals, instead, that she made two arguments: (1) she

first alleged that the ALJ was required to re-contact Dr. Davis to obtain

clarification regarding his June 2006 opinion, see Pl. Br., at 8-9; and (2) she next

claimed that because the evidence raised the strong possibility that she met Listing

Section 1.02, the ALJ was required to "obtain a medical opinion on that point from

Dr. Davis or any other physician." Pl. Br., at 10.  Neither of these arguments

originally presented to Judge Cayer have any merit as shown in the

Commissioner's initial brief, Comm. Br., at 7-8 & 10-11, and in Judge Cayer's recommendation. M&R, at 7-9.

First, plaintiff argued that in the alternative, the ALJ should have re-contacted Dr. Davis "regarding evidence that was, at the very worst, ambiguous." Pl. Br., at 8. The regulations state that an ALJ has a duty to seek additional information from a physician if the information provided by that doctor is inadequate to determine whether the claimant is disabled. 20 C.F.R. § 404.1512(e). Review of the decision of the ALJ reveals no finding that Dr. Davis' medical findings or opinions were either unclear or inadequate to determine disability. A.R., at 20. The ALJ had no duty, therefore, to re-contact Dr. Davis or to seek an explanation. Jackson v. Barnhart, 368 F. Supp. 2d 504, 508-509 (D.S.C. 2005). This same issue was raised in the previous action before this court and this court determined that Dr. Davis' opinion was not ambiguous, as the doctor's opinion indicated that plaintiff needed to elevate her right leg for two hours while sitting. Smith v. Astrue, supra, (#24), at 8.

Second, plaintiff contends that the ALJ was obligated to "obtain a medical opinion on that point from Dr. Davis or any other physician" since the evidence in this case raised the possibility that her impairment met Listing Section 1.02. Pl. Br., at 10. An ALJ must only identify the relevant listed impairments, and then

compare each of the stated criteria to the claimant's symptoms where there is ample evidence in the record to support a determination that the claimant's impairment might meet or equal a listing. Cook v. Heckler, 783 F.2d 1168, 1172-1173 (4th Cir. 1986). Substantial evidence, most of which this court considered in the earlier action, supports the ALJ's conclusions as plaintiff has not demonstrated that her impairment met or equaled a listed impairment or that the ALJ was required to engage in an extended discussion of whether her impairment met or equaled a listing section.

Plaintiff's Twelfth Objection will, respectfully, be overruled.

## IV.    Conclusion

The court has carefully considered Judge Cayer's Memorandum and Recommendation, plaintiff's Objections, and defendant's Response. Further, the court has reviewed relevant portions of the Administrative Record, including the ALJ's determination as well as the decision of the Appeals Council. The court has further considered the previous decision of this court as discussed above. Based on such review, the court finds that Judge Cayer correctly determined that the ALJ's decision was based on substantial evidence, and the court adopts the M&R as the decision of this court.

**ORDER**

**IT IS, THEREFORE, ORDERED** that:

(1)     Plaintiff's Objections (#16) are respectfully **OVERRULED**;

(1)     The Commissioner's Motion for Summary Judgment (#12) is

      **GRANTED**;

(2)     Plaintiff's Motion for Judgment on the Pleadings (#11) is **DENIED**;

(3)     The Commissioner's decision is **AFFIRMED**; and

(4)     Plaintiff's claim is hereby **DISMISSED**.


A judgment consistent with this Memorandum of Decision and Order shall

be entered simultaneously herewith.


Signed: March 31, 2011

Max O. Cogburn Jr.
United States District Judge